William A. Barden *et al.*, Respondents, *v.* St. Louis Mutual Life Insurance Company, Appellant.

### January 29, 1877.

1. A transfer by the directors of one insurance company of its entire property to another company is void as to dissenting policy-holders, and no action will arise for any breach of the policy by reason of such transfer.

2. Where judgment is rendered in the court below upon an agreed statement of facts and admissions by the parties, all presumptions are in favor of the validity of the judgments, and the burden is upon appellants to show that the judgment is erroneous.

Appeal from St. Louis Circuit Court.

*Reversed and judgment.*

*Davis & Smith* and *George A. Madill*, for appellant, cited: Russum *v.* St. Louis Mutual Ins. Co., 1 Mo. App. 228; Anderson *v.* St. Louis Mutual Ins. Co., Ins. L. J., Aug. 1876, p. 605; Bergmann *v.* St. Louis Mutual Ins. Co., 2 Mo. App. 262; Moser *v.* Phœnix Mutual Life Ins. Co., 2 Mo. App. 408; Frazer *v.* St. Louis Mutual Life Ins. Co., U. S. Cir. Ct., Nashville, Tenn.; Yerger *v.* St. Louis Mutual Life Ins. Co., U. S. Cir. Ct., Memphis, Tenn., 1876; Nettleton *v.* St. Louis Mutual Life Ins. Co., Oct. term, 1876; Treadway *v.* Salisbury Mfg. Co., 7 Gray, 393; Hood *v.* New York & New Hampshire R. R. Co., 22 Conn. 1; Green's Brice's Ultra Vires, 74; Stone *et al. v.* Corbett, 20 Mo. 350; Robinson *v.* Rice, 20 Mo. 229; Cooper *v.* Ord, 60 Mo. 420; Wag. Stat., ch. 76, sec. 41, p. 756, sec. 44.

*Zach. J. Mitchell*, for respondents, cited: Von Phul *v.* City of St. Louis, 9 Mo. 50; Clark *v.* Stevens, 10 Mo. 510; Givens *v.* Cady, 15 Mo. 277; Boyce *v.* Burt, 34 Mo. 74; Wilson *v.* North Missouri R. R. Co., 46 Mo. 36; Public School *v.* Risley, 40 Mo. 356; Buckley *v.* Knapp, 48 Mo. 152; Ashburry *v.* Servin, 47 Mo. 298; Cowan *v.* St. Louis & Iron Mountain R. R. Co., 48 Mo. 556; Hart *v.* Hahn, 61 Mo. 496; Reed *v.* Piedmont Ins. Co., 58 Mo. 421; Russell *v.* Whitely, 59 Mo. 196; Gener *v.* Smith, 48

Mo. 43; McHugh *v.* Meyer *et al.*, 61 Mo. 334; Davis *v.* Ware, 57 Mo. 461; Mead *v.* St. Louis Mutual Life Ins. Co., 52 How. Pr. 1; Cohen *v.* New York Mutual Ins. Co., 50 N. Y. 619; 2 Pars. on Con. 467, note *a;* Wag. Stat., ch. 76, sec. 28.

HAYDEN, J., delivered the opinion of the court.

The record states that this cause was submitted to the court below, sitting as a jury, on an agreed statement of facts, which is as follows:

" Said cause coming on to be heard, and being submitted to the court, it is hereby mutually agreed by and between plaintiffs and defendant herein: The policy No. 14,077, with petition filed, is admitted, and shows terms and conditions of contract between plaintiffs and defendant. The marriage of plaintiffs admitted as in petition charged.

" It is admitted that the sale and transfer of property and assets of, and abandonment of business by, the defendant, as also of plaintiffs' contract, as charged by plaintiffs in the petition, has reference solely to the contract of reinsurance between the defendant and the Mound City Life Insurance Company of December 13, 1873, a compliance with all the terms and conditions of which by both of said companies is hereby admitted, and a copy of said contract submitted in evidence, as is also the charters of said companies, together with a copy of the record in case of *F. P. Blair, Superintendent of Insurance, etc.,* v. *The St. Louis Mutual Life Insurance Company,* in St. Louis Circuit Court, October term, 1873, by virtue of which proceedings and the charters of said companies defendant herein, as in answer filed, claims authority for, and right to make and enter into, said contract of December 13, 1873, and exemption from all liability by reason thereof as charged in plaintiffs' petition, which right is by plaintiffs in their replication herein denied, and the issue thus made is submitted to the court.

" It is further agreed that no knowledge on the part of plaintiffs, of said contract of December 13, 1873, is claimed

by defendant, saving by implication from publication thereof as made and publicity given to it in the public press at or about the date thereof.

" It is admitted that plaintiffs paid the annual premium on said policy of $343.80 in quarterly payments of one-third, by note reduced by dividends as declared, and two-thirds thereof in cash, as follows, to wit:

Cash December 16, 1868, as per indorsement on policy.......................$57.95
Cash March 16, 1869, books of company... 57.95
Cash June 16, 1869, receipt............... 57.95
Cash September 16, 1869, receipt........ 57.95
Cash December 16, 1869, receipt......... 69.35
Cash March 16, 1870, books of company... 57.95
Cash June 16, 1870, receipt............. 57.95
Cash September 16, 1870, receipt........ 57.95
Cash December 16, 1870, books of company, 57.95
Cash March 16, 1871, receipt............ 57.95

" And on the 16th day of December, 1869, plaintiff executed and delivered to defendant his note for $189.97 as balance due on premium for years aforesaid, and otherwise so complied with terms and conditions thereof that said policy stood, as is hereby admitted by defendant, on books of defendant, in force for an amount proportionate to the amount originally insured, as the premiums paid bear to number of premiums agreed to be paid, less outstanding note as aforesaid."

The policy of insurance and the contract of date December 13, 1873, between the Mound City Life Insurance Company and the defendant were received in evidence by the court below, in connection with the above statement, as was, also, the record of proceedings in the suit of Francis P. Blair, superintendent of insurance, etc., against this defendant. No instructions were asked or given, and no exceptions to evidence were taken, at the trial. The court below, sitting as a jury, found for the plaintiffs in the sum of $811.18,

which is the amount of cash premiums paid on the policy, with interest at 6 per cent. per annum from the date of each payment. A motion for new trial and one in arrest of judgment were made and overruled.

The policy, in consideration of an annual premium of $343.80 on or before December 16th in each year, for fifteen consecutive years, to be paid, assures the life of William A. Barden in the amount of $5,000. The annual premiums are to be paid as follows: an annual premium note of $112, and a quarter-annual cash premium of $57.95, on the 16th day of December, March, June, and September. The company agree to pay the policy on December 16, 1883, when the insured shall have attained the age of forty-five years, or in ninety days after due notice and proofs of his death, if he should die before that date. The policy has the following proviso:

" That if the two annual premiums next due and payable after the date hereof shall be well and truly paid, and default shall be made in the payment of said annual premiums thereafter to become due and payable, at the time hereinbefore mentioned and limited for the payment thereof respectively, then and in such case such default shall not work a forfeiture of this policy, but the sum of five thousand dollars, the amount insured, shall be then commuted or reduced to such proportional part of the whole sum or amount insured as the sums of the annual payments so paid by the said insured shall bear to the sum of the fifteen annual payments herein stipulated and agreed to be paid by said William A. Barden as aforesaid."

It is obvious from the above that the case was not tried in the court below on what is properly called an agreed statement of facts. An agreed statement of facts, strictly speaking, corresponds to a special verdict. It presupposes that the issues have been settled, the evidence passed upon, and contains, therefore, no questions arising on the pleadings

or any matter of evidence, but results in the form of ascertained facts.    When these facts are submitted to a court, it is the business of a court to deduce from them the proper legal conclusions.    But the statement in this case, while it sets out some facts, is rather in the nature of admissions made by the parties to the case in the course of a trial, to obviate the necessity of adducing evidence and to narrow down the issues presented by the pleadings to questions of law for the court.    Under these circumstances the question involved in this case may be said to be, Does this statement of facts, together with the evidence preserved by the bill of exceptions, taken with all the inferences which the court below might fairly deduce from the statement and the evidence, justify the judgment of the court below?    The question is asked in this form in order to give the plaintiffs the fullest benefit of the statement, and because, when so put, it disposes at the outset of some objections which are preliminary in their character.

For instance, the plaintiffs object that, as no exceptions were saved to evidence, and no instructions given or refused, at the trial, this court should not interfere with the judgment of the court below.    But the position is obviously untenable.    As no instructions were given, or rulings upon evidence made, the action of the court below must be taken to be correct, unless it appears that upon the facts the judgment could not have been given consistently with a correct application of the law to the case.    The appellant says it could not, and the burden is on the appellant to show it. The judgment of the court below is presumed to be correct. But the appellant contends that, admitting all the facts and admitting everything that the evidence tends to prove, the judgment is incorrect ; in other words, that it is impossible to contrive any sound legal theory that will fit the case. This position implies no question similar to those involved in the cases cited by the respondents as to the weight of evi-

dence.   Such questions this court will not consider ; but it will consider whether, when all the facts are admitted, those facts justify the court below in rendering the judgment.

Taking the statement of facts, and the inferences such as the court below would reasonably have drawn from what is stated, it must be presumed that the policy filed with the petition was in force at the time of the bringing of this suit. It is stated that the plaintiffs so complied with the terms and considerations of this policy that the policy stood in force on the books of the defendant for an amount proportionate to the amount originally insured as the premiums paid bear to the number of premiums agreed to be paid, less the outstanding premium note.   From this it may fairly be inferred that the policy was in force, and that the defendant so considered it.   Accordingly, no question of any failure to pay interest on any premium note arises in the case, and no question as to the payment of any annual premium.   Under the statement of facts, the defendant cannot claim that the policy had been forfeited.

By the contract of date December 13, 1873, between the appellant and the Mound City Life Insurance Company, the appellant agrees to transfer and deliver all its property and assets to the Mound City Company, and the latter agrees to, and states that it does, receive all the risks of the appellant, and further agrees to pay all the appellant's debts and liabilities.   The effect of this contract, as bearing upon the rights of policy-holders in the situation of the respondents, has been fully considered in the case ( decided at the present term of this court) of *Celsus Price, Superintendent, etc.,* v. *The St. Louis Mutual Life Insurance Company.*   It would serve no purpose to restate the reasons upon which we arrived at the conclusion that, as against dissenting policy-holders, the transfer of the property and effects of the appellant to the Mound City Life Insurance Company was contrary to law, and the contract void so far as such

transfer is concerned. We have only to apply the conclusions there arrived at to the present case.

This action is not brought to recover for any loss under the policy, or for any sum of money agreed to be paid upon the policy; nor are any damages claimed for the breach of any covenant expressed in the policy. The plaintiffs allege, in their petition, that, while the policy was in full force as a commuted policy, the defendant. disposed of its effects and ceased to do business as a life insurance company; that thereby the plaintiffs' interest in the profits and property of the company became lost to them; that defendant refused, and is unable, to comply with the terms of the policy on its part to be performed, so that the policy has become valueless to the plaintiffs, to their damage, etc. It would seem that the respondents claim there was an implied covenant arising under the policy, which covenant was broken by the making of the contract of December 13, 1873. They appear to assume that the policy has been put an end to by the act of the appellant. On any other supposition they must confess their action premature. But how has an end been put to the policy? It is said that the act of the appellant was in conflict with a fundamental principle of law governing contracts, by which, where a party contracts to do an act on a future day, he agrees to do nothing in the meantime that will prevent him from complying with that contract. No doubt there is a rule that, where a party who has contracted to do a particular thing within a certain time puts himself, by his own voluntary act, in a situation where he cannot do that thing, the person with whom he contracts may sue for breach before the expiration of the time. Thus, when a vendor agrees to sell a lot of land within a given time, the promisee may have his action at once in case the vendor sells the land to another before the time expires. There the specific property bargained for is conveyed to a third person. The vendor has put it out of his

power to perform his contract; and the law, which does not require a man to wait to no purpose, allows the other party to sue immediately.    Here the respondents' assumption that the contract will not be performed is plainly gratuitous.    The respondents are afraid it will not be performed, and, upon this, ask the court to say that it will not.    As Lord Cockburn said in *King* v. *The Accumulative Life Fund, etc.*, 91 C. B. 149 : " Independently of profits, the plaintiff or his representatives could have no claim upon the company until his policy becomes payable, viz., at his death or in the year 1874.    Until that event happens, or that period arrives, the action is, as it has been very properly designated, an action *quia timet*.    *Non constat* that when the money becomes due the amount will not be paid by the company."    In that case the plaintiff was nonsuited, though the facts were more strongly in the plaintiff's favor than here ; for, by the terms of the policy, the holder was to look only to the fund.    Yet, though the fund and all the assets were transferred, it was held that there was no breach of any implied covenant to keep the fund to answer the plaintiff's claim upon it.    The respondents in this case proceeded, moreover, upon the basis that the making of the contract of December 13, 1873, and the transfer under it, entitled them to bring this action.    But no such effect followed.    The act of the directors of the appellant was of no avail to pass its property as against dissenting policyholders ; and, as a matter of course, it follows that, the transfer being void, no action could arise for any breach of the policy by reason of such transfer.    We are referred to the case of *Meade* v. *The St. Louis Mutual Life Insurance Company*, 51 How. Pr. 1, but we do not think that the conclusions at which the court in that case arrives rest upon principle or sound reasoning.    We know of no case, other than that just mentioned, in which a plaintiff has been permitted to recover for breach of policy under circumstances similar to these.    In the case above cited from

the Common Bench Reports the judges of the English Court of Common Pleas, then presided over by Lord Cockburn, were unanimous in holding that the plaintiff should be nonsuited. The opinions of the judges are given *seriatim*, and consist, not of assumptions, but of the soundest legal reasoning.

The bulk of the record has been greatly increased in this case by incorporating into it the proceedings in a certain suit brought in the court below by William Selby, superintendent of insurance, etc., against this appellant, under the 41st section of the act relating to life insurance companies. Wag. Stat. 753. An injunction was obtained, but the bill was finally dismissed by the plaintiff. This being so, the circumstances under which it was dismissed are immaterial. The introduction of irrelevant matter in papers filed in court cannot give to proceedings an effect which they would not otherwise have. Under the conclusions which we have arrived at, the action of the then superintendent of the Insurance Department was of no legal force.

The present action of the plaintiffs being founded on the basis that the obligation of the defendant arising from the policy has been violated by the transfer of the assets of the defendant, as set forth in the petition, and we holding that no such action lies, the judgment of the court below is reversed, and judgment will be entered here for the defendant (appellant). The other judges concur.